IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**FRANK WALDEN**, personal representative
for the Estate of **MARK WALDEN**,
**FRANK WALDEN**, an individual,

        Plaintiffs,

        v.

**Officer DAWSON**, **Sergeant C. STUBBS**,
**Officer R. SCHACHT**, **CITY OF EUGENE**,
by and through the Eugene Police Department,
a municipal corporation in the State of Oregon,

        Defendants.

_____

**Civ. No. 6:12-cv-02155-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

      On December 2, 2010, Frank Walden contacted the Eugene Police Department (EPD) non-emergency line seeking assistance from a mobile mental health crisis unit, Crisis Assistance Helping Out On The Street (CAHOOTS). When he learned that CAHOOTS was unavailable, he agreed to meet EPD officers at the front of his residence. There he informed the EPD that his son, Mark Walden, was schizophrenic, had discontinued his medication, and had recently begun barricading the front door with items from his room. After consulting with Frank Walden, the officers entered the residence through the back door and contacted Mark Walden. Mark Walden, initially polite, became more agitated as the officers impeded him from moving additional items from his bedroom to the front door. This agitation escalated to the point where Mark Walden

1 – OPINION AND ORDER

threw the items he was carrying, hitting Officer Dawson and Sergeant Stubbs. The officers then handcuffed Mark Walden and transported him to Sacred Heart Medical Center, Riverbend.

On December 3, 2010, Mark Walden was administered an overdose of his medication, resulting in coma and his subsequent death on December 13, 2010.

This Court is asked to consider: (1) whether the officers violated the Fourth[1] or Fourteenth Amendments by entering Frank Walden's residence and seizing Mark Walden; and (2) whether the City of Eugene denied Mark Walden a reasonable accommodation under the Americans with Disability Act (ADA), 42 U.S.C. §§ 12101–213. Because the officers lawfully entered Frank Walden's residence and lawfully seized Mark Walden, and the City of Eugene neither denied Mark Walden a reasonable accommodation nor intentionally discriminated against him, this Court GRANTS defendants' motion for summary judgment, ECF No. 58.

## PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of an alleged unlawful search and seizure. On December 2, 2010, at approximately 11:00 a.m., Frank Walden contacted the EPD non-emergency line.[2] Decl. of Ben Miller 6–15, ECF No. 59. Frank Walden indicated that he needed CAHOOTS to assist him with his schizophrenic adult son, Mark Walden. *Id*. at 6. However, after Frank Walden was informed that the CAHOOTs unit was unavailable until 1:00 p.m., he agreed to meet the responding EPD officers. *Id*. at 6, 9, 11, 13–14.

A few minutes later, Officer Dawson, Officer Schacht, and Sergeant Stubbs, along with other EPD officers, responded to Frank Walden's home. *Id*. at 65 ("Q . . . . How long are you

---

[1] In *Mapp v. Ohio*, 367 U.S. 643, 655, 660 (1961), the Supreme Court selectively incorporated the Fourth Amendment through the Fourteenth Amendment Due Process clause and applied it to the states. For purposes of this opinion, this Court will use "Fourth Amendment" in lieu of "Fourteenth Amendment Due Process Clause" for ease of convenience.

[2] The EPD non-emergency line is used to contact CAHOOTS. Decl. of Ben Miller 77, ECF No. 59 ("[Frank Walden] called dispatch and asked for Cahoots. People don't call Cahoots directly.").

2 – OPINION AND ORDER

outside before the police show up? A. Three or four minutes . . . ."). Frank Walden alleges that he initially told the responding officers to leave. *E.g.*, *id*. at 66. However, he subsequently provided the officers with information relating to Mark Walden's condition, and the layout of his home. *Id*. at 66. After providing this information, Frank Walden led the EPD officers to the back door. *Id*. at 28, 66.

Officer Dawson, Officer Schacht, and Sergeant Stubbs entered through the back door. *E.g.*, Decl. of Dale Dawson 3, ECF No. 60; Decl. of Rachel Schacht 3, ECF No. 61. Upon entering, they encountered a naked Mark Walden. *E.g.*, Decl. of Dale Dawson 8, ECF No. 60. At that time, Mark Walden was in the process of moving various items, including furniture, from his room and placing these items in a position blocking access to the front door. Decl. of Ben Miller 18, ECF No. 59.

Mark Walden, initially polite, became more agitated as the officers impeded him from moving additional items from his bedroom to the front door. Decl. of Dale Dawson 8, ECF No. 60. Officer Dawson and Sergeant Stubbs blocked Mark Walden from leaving his bedroom while repeatedly asking him to drop held items and put on pants. Decl. of Ben Miller 34, ECF No. 59. Mark Walden raised his hands and threw the items at Officer Dawson and Sergeant Stubbs. Decl. of Dale Dawson 8, ECF No. 60. Those items, some of which hit Officer Dawson and Sergeant Stubbs, *id*., included closed pocket knives, Decl. of Ben Miller 55–56, ECF No. 59 ("He never used a knife as a weapon but - - and he just threw it at us."); Second Am. Compl. 8, ECF No. 30 ("Mark had an armful of presents still in their boxes which the officers told him to drop. The boxes contained small pocket knives Mark was giving as Christmas presents. They were all sealed and closed up."). Shortly afterward, Mark was handcuffed. Decl. of Ben Miller 82, ECF No. 59; Decl. of Carl Stubbs 3, ECF No. 62.

3 – OPINION AND ORDER

The officers, with assistance from medics on site, wrapped Mark Walden in a tablecloth[3] and transported him by gurney to an ambulance. Decl. of Ben Miller 48, 68, ECF No. 59. Officer Dawson accompanied Mark Walden in the ambulance during transport to the Sacred Heart Medical Center, Riverbend, in Springfield, Oregon. *Id*. at 69; Decl. of Custodian of Records 3, ECF No. 63. At approximately 3:30 p.m., Mark Walden was admitted on a two-physician mental health involuntary hold at Sacred Heart Medical Center. Decl. of Custodian of Records 3, ECF No. 63. At that time, Scott Williams., M.D., concluded that Mark Walden was a danger to himself or others because of his exhibited "behaviors," including: "Yelling, hallucinating. Not eating. Unable to follow directions. Threw knives at police. Stopped taking medications 1 week ago." *Id*.

On December 3, 2010, Mark Walden, while receiving treatment at Sacred Heart Medical Center, Riverbend, was administered an overdose of his medication. Second Am. Compl. 10, ECF No. 30. Mark entered a coma and later died on December 13, 2010. *Id*.; Decl. of Ben Miller 69, ECF No. 59.

On November 27, 2012, plaintiffs filed this action against Sergeant Solesbee, Sergeant Stubbs, Officer Schacht, and the City of Eugene, asserting various constitutional claims under 42 U.S.C. § 1983, a claim under the ADA, and claims under Oregon common law. Compl. 11–21, ECF No. 1.

---

[3] The record is unclear regarding the item actually used to cover Mark Walden as he was transported on the gurney. *Compare* Decl. of Ben Miller 68 ECF No. 59 ("[A]s they were coming out I said, put this tablecloth over him, because he was bringing him out nude."), *with* Decl. of Dale Dawson 8, ECF No. 60 ("We wrapped Mark's lower body in a blanket . . . ."), *and* Decl. of Rachel Schacht 3, ECF No. 61 ("[W]e carried him in a sheet to a waiting gurney . . . .").

On May 28, 2013, plaintiffs filed an amended complaint, which substituted Officer Dawson for Sergeant Solesbee. Am. Compl. 3, 7–9, ECF No. 17.[4]

On July 3, 2013, plaintiffs filed a second amended complaint. That complaint, much like the original, seeks damages under 42 U.S.C. § 1983, the ADA, and Oregon common law. Second Am. Compl. 10–16, ECF No. 30.

## STANDARD OF REVIEW

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id*. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

Plaintiffs, in their second amended complaint, assert claims for: (1) unlawful search and seizure under the Fourth Amendment; (2) interference with familial relations under the Fourteenth Amendment; (3) denial of reasonable accommodation under Title II of the ADA; and

---

[4] This Court declines to discuss the timeliness of claims against Officer Dawson.

(4) false imprisonment under Oregon common law. Defendants move for summary judgment as to all claims.[5]

## I. Fourth Amendment

Plaintiffs contend that Officer Dawson, Officer Schacht, and Sergeant Stubbs unlawfully entered Frank Walden's residence and unlawfully seized Mark Walden. Second Am. Compl. 10–12, ECF No. 30. Defendants, in reliance on the emergency aid exception to a search warrant and the probable cause exception to an arrest warrant, argue that both actions were lawful under the circumstances. Defs.' Mot. Summ. J. 9–11, 13–15, ECF No. 58. This Court addresses each issue in sequence.

### A. Search: Entry into Frank Walden's Residence

"The Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (citations and internal quotation marks omitted). "Searches and seizures inside a home without a warrant are presumptively unreasonable, but that presumption is not irrebuttable, and a warrantless search or seizure is permitted to render emergency aid or address exigent circumstances." *Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1221 (9th Cir. 2014) (citation omitted).

"The emergency aid exception applies when: '(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's

---

[5] Plaintiffs' counsel does not dispute defendants' assessment of the law or facts. Pls.' Resp. to Mot. Summ. J. 2, ECF No. 66.

6 – OPINION AND ORDER

scope and manner were reasonable to meet the need.'" *Sheehan*, 743 F.3d at 1221 (quoting *United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008)).

Defendants contend that they had an objectively reasonable basis for concluding that there was an immediate need to protect others from serious harm. Officer Dawson, Officer Schacht, and Sergeant Stubbs, having arrived at the scene, were informed by Frank Walden that Mark Walden was "unwell," naked, barricading the front door with items from his room, and had neither taken his medication for seven days nor slept for approximately 48 hours. Decl. of Ben Miller 6–7, ECF No. 59 ("it's just gone downhill to where he's just – he can't think straight at all.").[6] Frank Walden also indicated that he had firearms hidden in his locked bedroom. *Id*. at 66. These factual circumstances, particularly when considered in light of Frank Walden's extensive caregiving experience and decision to seek third-party assistance, *id*. at 65, provide an objectively reasonable basis to conclude that there was an immediate need to protect Mark Walden from serious harm, *see United States v. Black*, 482 F.3d 1035, 1040 (9th Cir. 2006) ("This is a case where the police would be harshly criticized had they not investigated . . . . Erring on the side of caution is exactly what we expect of conscientious police officers.").

Defendants also contend that the search's scope and manner were reasonable. Officer Dawson, Officer Schacht, and Sergeant Stubbs entered the residence after developing a plan based upon information provided by Frank Walden. Pursuant to this plan, the officers entered the residence with their sidearms holstered and spoke with Mark Walden in calm, friendly terms in an effort to persuade him to resume his medication. Mark Walden was handcuffed only after he began throwing closed pocket knives at the officers. The officers, with assistance from medics on

---

[6] There is a dispute in the record regarding whether Frank Walden also informed the officers that Mark had not been eating or drinking. *Compare* Decl. of Rachel Schacht 2, ECF No. 61 ("[Mark Walden was] "reportedly not eating or drinking."), *with* Decl. of Ben Miller 67, ECF No. 59 ("Q. Did you tell the officers he hadn't been eating? A. No.").

7 – OPINION AND ORDER

site, wrapped Mark Walden in a tablecloth and transported him by gurney to the ambulance. Such action is reasonable in both scope and manner under the totality of the circumstances. Accordingly, defendants are GRANTED summary judgment.

### B. Seizure: Mental Health Hold on Mark Walden

"[A] warrantless arrest by a law officer is reasonable under the Fourth amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'" *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Mark Walden was seized without warrant inside of his home on December 2, 2010, pursuant to a "peace officer hold" under ORS § 426.228(1). ORS § 426.228(1) provides, in relevant part:

> (1) A peace officer may take into custody a person who the officer has probable cause to believe is dangerous to self or to any other person and is in need of immediate care, custody or treatment for mental illness. As directed by the community mental health program director, a peace officer shall remove a person taken into custody under this section to the nearest hospital or nonhospital facility approved by the Oregon Health Authority. The officer shall prepare a written report and deliver it to the treating physician. The report shall state:
>
> (a) The reason for custody;
>
> (b) The date, time and place the person was taken into custody; and
>
> (c) The name of the community mental health program director and a telephone number where the director may be reached at all times.

*See also* ORS § 426.005(1)(e) (defining "Person with mental illness").[7]

Defendants contend that they had probable cause to reasonably believe that Mark Walden was a danger to himself and others under ORS § 426.228(1). This Court looks to the factual circumstances.

At the time of seizure, Officer Dawson, Officer Schacht, and Sergeant Stubbs were aware that Mark Walden was naked, not taking his medication, sleep deprived, and barricading the front door with items from his room. In addition, Frank Walden, Mark Walden's father and caregiver, informed a responding officer that Mark Walden "could be a threat to himself when he doesn't take the medicine." Decl. of Ben Miller 66, ECF No. 59. These factors, although arguably insufficient under analogous case law,[8] are sufficient to extend qualified immunity to Officer Dawson, Officer Schacht, and Sergeant Stubbs.

In an action under 42 U.S.C. § 1983, an officer will be denied qualified immunity "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established

---

[7] ORS § 426.005(1)(e) provides, in relevant part:

> (e) "Person with mental illness" means a person who, because of a mental disorder, is one or more of the following:
>
> (A) Dangerous to self or others.
>
> (B) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety.
>
> . . .

[8] The vast majority of relevant case law arises in the civil commitment context. Those cases interpret "Dangerous to self or others" under ORS § 426.005(1)(e) and ORS § 426.130(1). For example, in *State v. N.A.P.*, 216 Or. App. 432, 437 (2007), the Oregon Appellate Court noted that "[t]he state must . . . show causation-that *current* indicators, symptoms, or behaviors of that mental disorder show that the threatened harm is likely to occur . . . .The condition of 'dangerous to self' must be caused by the person's present mental disorder to justify intervention to protect her from her own dangerous state." (emphasis in original). In other words, the analysis of "dangerous to self" hinges on "whether [Mark's] mental disorder would cause [him] to engage in behavior that is likely to result in physical harm to [himself] in the near future." *Id*. at 438. This Court, having reviewed the record, has reservations as to whether this causation requirement was met under the circumstances. *See id*. at 439 ("Although delusional behavior may be inherently risky, that behavior is not enough to warrant involuntary commitment unless danger to self is highly probable in the near future; mere speculation is not enough.").

9 – OPINION AND ORDER

at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201–202 (2001)). As to the second prong, this Court is unable to find that a reasonable officer would have understood his or her conduct to be unlawful under the circumstances. Both Frank Walden and Dr. Williams, having considered Mark Walden's deteriorating condition, opined that he presented a danger to himself. Decl. of Ben Miller 66, ECF No. 59; Decl. of Custodian of Records 3, ECF No. 63. This Court cannot expect defendant police officers, as a matter of law, to find otherwise.

In any event, Officer Dawson, Officer Schacht, and Sergeant Stubbs had probable cause to arrest Mark Walden for Harassment under ORS § 166.065(1)(a)(A).[9] Mark Walden threw closed pocket knives at Officer Dawson and Sergeant Stubbs, which resulted in offensive physical contact. Accordingly, defendants are GRANTED summary judgment.

## II. Interference with Familial Relations

Plaintiffs, in their claim for interference with familial relations under 42 U.S.C. § 1983, assert that defendants unlawfully interfered with familial relations between Frank and Mark Walden. Second Am. Compl. 12–13, ECF No. 30. In response, defendants contend that their conduct was lawful and resulted in only a brief separation. Defs.' Mot. Summ. J. 15–16, ECF No. 58.

---

[9] ORS § 166.065(1) provides, in relevant part:

> (1) A person commits the crime of harassment if the person intentionally:
>
> (a) Harasses or annoys another person by:
>
> (A) Subjecting such other person to offensive physical contact;
>
> . . .

10 – OPINION AND ORDER

"Parents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 1999) (citations omitted). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Id.* at 1136–37 (citations omitted). "To amount to a violation of substantive due process, however, the harmful conduct must shock the conscience or offend the community's sense of fair play and decency." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (citations and internal quotation marks omitted) (per curiam).

Defendants' lawful seizure of Mark Walden neither shocks the conscience nor offends the community's sense of fair play and decency. Defendant officers lawfully entered the residence and administered non-lethal force after Mark Walden began throwing objects. This Court is not prepared to find that such facts rise to the level of conduct that shocks the conscience. Accordingly, defendants are GRANTED summary judgment.

### III. ADA

Plaintiffs, in their claim for discrimination under Title II of the ADA, assert that defendants failed to provide Mark Walden with reasonable medical accommodations, including proper medical intervention. Second Am. Compl. 14, ECF No. 30. Defendants contend that plaintiffs' claim is time-barred under the statute of limitations and, if timely, is precluded because Mark Walden was not denied a reasonable accommodation. Defs.' Mot. Summ. J. 17–18, ECF No. 58.

"A plaintiff has no cause of action under the ADA for an injury that occurred outside the limitations period." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002).

11 – OPINION AND ORDER

If a limitations period is not specified within Title II of the ADA, this Court must determine whether the claim "arose under" either 28 U.S.C. § 1658[10] or Title II of the ADA as originally enacted. *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1005–1006 (9th Cir. 2011). Because Title II of the ADA does not contain a statute of limitations period, *Pickern*, 293 F.3d at 1137 n. 2, and plaintiffs' claim arose under Title II of the ADA as originally enacted,[11] this Court must apply the most analogous state law, *Wilson v. Garcia*, 471 U.S. 261, 269 (1985), *superseded by statute on other grounds*, 28 U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–80 (2004).

In Oregon, that law is ORS § 659A.142(5). *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, No. 03:13-cv-01562-HZ, 2014 WL 897123, at *8 (D. Or. Mar. 6, 2014); *cf. Clink v. Or. Health & Sci. Univ.*, 9 F. Supp. 3d 1162, 1168 (D. Or. 2014) (finding that plaintiff's Rehabilitation Act claim was most analogous to ORS § 659A.142). ORS § 659A.142(5), like Title II of the ADA, prohibits a state entity from denying an individual the benefits of the services, programs, or activities provided by that entity because the individual has a disability. *Compare* ORS § 659A.142(5),[12] *with* 42 U.S.C. § 12132.[13]

However, contrary to defendants' suggestion, this Court finds that a two-year statute of limitations, not a one-year statute of limitations, applies to plaintiffs' discrimination action under Title II of the ADA. As discussed in *Lowry* at length, the one-year limitation period in ORS §

---

[10] 28 U.S.C. § 1658 provides, in relevant part: "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." "Section 1658 was enacted on December 1, 1990." *Johnson*, 653 F.3d at 1006.
[11] The ADA became effective July 26, 1990. Americans with Disability Act of 1990, Pub. L. No. 101-336, 104 Stat. 327 (codified as 42 U.S.C. §§ 12101 to 12213 (1994)).
[12] ORS § 659A.142(5) provides, in relevant part: "[i]t is an unlawful practice for state government to exclude an individual from participation in or deny an individual the benefits of the services, programs or activities of state government or to make any distinction, discrimination or restriction because the individual has a disability."
[13] 42 U.S.C. § 12132 provides: "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

12 – OPINION AND ORDER

659A.875(1)[14] applies to civil actions alleging an unlawful employment practice. *Lowry*, 2014 WL 897123, at * 9. Because this is not an employment action, but a discrimination action, this Court must look elsewhere. *Id*.

In *Lowry*, the district court looked to ORS § 12.110. 2014 WL 897123, at * 9. Under ORS § 12.110(1), a two-year statute of limitations applies to actions for "any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter." The *Lowry* court, upon finding that ORS Chapter 12 did not contain a statute of limitations for a discrimination action, held that ORS § 12.110(1) applied. 2014 WL 897123, at * 9. This Court, although receptive to the reasoning in *Lowry*, notes that reliance on ORS § 30.275(9) may be more appropriate in these factual circumstances. Under ORS § 30.275(9), a two-year statute of limitations applies to actions "arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 . . . ." The city of Eugene, as a local government body, is a "public body." ORS § 174.109; *Keller v. City of Portland*, No. CV-98-263-ST, 1998 WL 1060222, at *3–4 (D. Or. Nov. 13, 1998). As a "public body," Eugene is accused of failing to provide Mark Walden with reasonable medical accommodations. Yet, regardless of which statute this Court relies upon, both provide a two-year statute of limitations period. *Compare* ORS § 12.110(1), *with* ORS § 30.275(9).

Plaintiffs commenced this action on November 27, 2012; less than two-years after the date of injury. Although plaintiffs did not assert their ADA claim until May 28, 2013, this Court finds that the ADA claim "arose out of the conduct, transaction or occurrence set out . . . in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B). Thus, plaintiffs' ADA claim is timely.

---

[14] ORS § 659A.875(1) provides: "[e]xcept as provided in subsection (2) of this section, a civil action under ORS 659A.885 alleging an unlawful employment practice must be commenced within one year after the occurrence of the unlawful employment practice unless a complaint has been timely filed under ORS 659A.820."

Defendants also contend that plaintiffs' ADA claim is precluded because defendants provided a reasonable accommodation and plaintiffs cannot show discriminatory intent. Defs.' Mot. Summ. J. 18, ECF No. 58.

"To prevail under the ADA, [plaintiffs] must show that the accommodations offered by the County were not reasonable, and that [they were] unable to participate equally in the proceedings at issue." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1137 (9th Cir. 2001). Moreover, "[c]ompensatory damages are not available under Title II . . . absent a showing of discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). To determine whether discriminatory intent exists, this Court uses the deliberate indifference standard. *Duvall*, 260 F.3d at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002).

Plaintiffs proffer no argument or evidence suggesting that defendants' offered accommodation was unreasonable or that defendants acted with discriminatory intent. Rather, during deposition, Frank Walden indicated that he did not think the officers entered his home intending to hurt or discriminate against Mark Walden. Decl. of Ben Miller 72, ECF No. 59. Frank Walden believed that the officers entered his home to persuade Mark Walden to resume his medication. *Id*. at 67. Accordingly, defendants are GRANTED summary judgment.

## IV. False Imprisonment

Plaintiffs, in their claim for false imprisonment, assert that defendants "forcibly and without probable cause moved Mark Walden from his home without consent." Second Am. Compl. 14, ECF No. 30.

The tort of false imprisonment, also referred to as false arrest, has four elements, including: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Hiber v. Creditors Collection Serv. of Lincoln Cnty., Inc.*, 154 Or. App. 408, 413 (1998) (citations omitted). If a confinement is lawful, then plaintiffs' claim is precluded. *Napier v. Sheridan*, 24 Or. App. 761, 765 (1976) ("[I]t is fundamental that the arrest must have been a False arrest, i.e., one made without legal authority. If the arrest was lawful, then it was privileged.").

Defendants contend that probable cause existed under ORS § 426.228 and ORS § 166.065(1)(a)(A) to arrest Mark Walden. As discussed more thoroughly *supra* § I, this Court finds that Mark Walden was arrested pursuant to probable cause. Accordingly, defendants are GRANTED summary judgment.

## CONCLUSION

For these reasons, defendants' motion for summary judgment, ECF No. 58, is GRANTED.

IT IS SO ORDERED.

DATED this 7th day of November, 2014.

_____
**Michael J. McShane
United States District Judge**